# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 37771

| | | |
|---|---|---|
| IDAHO DEVELOPMENT, LLC, a Utah limited liability company, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Pocatello, August 2011 Term |
| TETON VIEW GOLF ESTATES, LLC, a | ) ) | 2011 Opinion No. 131 |
| Utah limited liability company; AMERITITLE COMPANY; ZBS, LLC., an | ) ) | Filed: December 12, 2011 |
| Idaho limited liability company; DEPATCO, INC., an Idaho corporation; SCHIESS & ASSOCIATES, P.C., an Idaho professional corporation, | ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents, | ) ) ) | SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION |
| and | ) ) | DATED NOVEMBER 3, 2011 IS HEREBY WITHDRAWN |
| ROTHCHILD PROPERTIES, LLC, a Utah limited liability company; WESTERN EQUITY, LLC, a Utah limited liability company; HD SUPPLY WATERWORKS, LTD; DOES 1-3, and ALL PERSONS IN POSSESSION OF REAL PROPERTY DESCRIBED HEREIN, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Appeal from the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

The decision of the district court granting summary judgment is vacated and the case is remanded for further proceedings in accordance with this Opinion.

Alan R. Harrison, Idaho Falls, for appellant.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondent ZBS. Karl R. Decker argued.

1

Fuller & Carr, Idaho Falls, for respondent DePatco, Inc.  Mark Fuller argued.

Beard, St. Clair, Gaffney, P.A., Idaho Falls, for respondent Schiess & Associates.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Idaho Development, LLC ("Idaho Development") advanced $1,100,000.00 to Teton View Golf Estates, LLC ("Teton View"), a joint venture made up of Idaho Development as a 33.3% owner and Rothchild Properties, LLC as a 66.7% owner.  Teton View granted Idaho Development a promissory note secured by a deed of trust that specified a set monthly payment and stated that the entire amount was to be paid off in ninety days.  Idaho Development filed an action to foreclose on the deed of trust after Teton View failed to satisfy the promissory note.  DePatco, Inc., another lienholder on the property, filed a motion for summary judgment to recharacterize Idaho Development's advance as a capital contribution, which was granted.  Idaho Development appealed, arguing that there was a genuine issue of fact as to whether the entire $1,100,000 advance was intended to be a capital contribution.  Idaho Development also appealed a subsequent summary judgment brought by ZBS, LLC, which relied on the recharacterization determination in holding that ZBS' lien on the property had priority over Idaho Development's lien.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Idaho Development, LLC ("Idaho Development") and Rothchild Properties, LLC ("Rothchild") wanted to form a Limited Liability Company known as Teton View Golf Estates, LLC ("Teton View").  On February 20, 2008, ZBS, LLC ("ZBS") transferred real property by warranty deed to Teton View with the understanding that Teton View would become operative in the upcoming weeks.  One day earlier, on February 19, 2008, Teton View granted ZBS a promissory note secured by a deed of trust on the property in favor of ZBS.  That deed of trust secured payment of $640,000 to ZBS, but was not immediately recorded.

On February 28, 2008, Idaho Development and Rothchild entered into a Joint Venture Agreement forming Teton View.  Under the terms of the Joint Venture Agreement, Idaho Development advanced $1,100,000.00 to the joint venture, "with the understanding that upon the funding of the construction loan, Idaho Development shall be repaid the sum of Eight Hundred

2

Thousand Dollars ($800,000)."  The remaining sum of $300,000 was to be subordinated to the construction loan.  Idaho Development made no other advancement to Teton View.  Rothchild contributed its time, skill, technology and know-how to Teton View.  In exchange for Idaho Development's advancement of $1,100,000.00, Idaho Development shared 33.3% of Teton View's profits and losses, while Rothchild shared 66.7% of the company's profits and losses.

The next day, on February 29, 2008, Idaho Development obtained a promissory note for repayment of $1,100,000.00 from Teton View, secured by a deed of trust on the same property as the ZBS deed of trust.[1]  In an effort to compromise ZBS' and Idaho Development's conflicting interests, Idaho Development agreed to reduce the deed of trust from $1,100,000 to $850,000, but refused to subordinate its deed of trust behind ZBS.  As a result, on March 7, 2008, Idaho Development's deed of trust was amended to an amount of $850,000.  On March 10, 2008, both Idaho Development and ZBS recorded their deeds of trust, but Idaho Development's deed of trust bears a lower instrument number evidencing that ZBS recorded behind Idaho Development.[2]

Idaho Development's promissory note called for six percent annual interest with monthly payments by Teton View of $5,595.06.  It required the balance to be paid in full no later than ninety days from the date of the note, or in other words, by May 28, 2008.  It also provided that Idaho Development was to receive 15% of the net proceeds from each lot sale.  Teton View did not satisfy the terms of the promissory note.  Idaho Development agreed to extend the due date on the promissory note until the end of June 2008 in exchange for a $10,000 payment.  Again, Teton View failed to satisfy the note by the extended deadline, and Idaho Development filed a complaint to foreclose its deed of trust against all junior interests.

In its amended complaint, Idaho Development listed several defendants, including Teton View, Rothchild, and ZBS.  It also listed Western Equity, LLC ("Western Equity"); Amerititle Company ("Amerititle"); DePatco, Inc. ("DePatco"); Schiess & Associates, P.C. ("Schiess"); and HD Supply Waterworks, Ltd. ("HD Supply") as defendants.  DePatco worked on the property at issue and recorded a lien on the property on October 20, 2008, after both Idaho Development and ZBS recorded their deeds of trust.  Teton View, Rothchild and Western Equity

---

[1] The deed of trust was recorded as Instrument # 1292699 in Bonneville County, Idaho.

[2] Idaho Development's amended deed of trust was recorded at 12:51 p.m., the same time as ZBS' deed of trust, but Idaho Development's bears a lower instrument number, # 1292697.

filed counter-claims against Idaho Development. Those parties stipulated to dismiss those claims on August 14, 2009. On January 5, 2010, DePatco filed a motion for partial summary judgment seeking recharacterization of Idaho Development's advancement, or alternatively, seeking equitable subordination of Idaho Development's lien to its own. In its Opinion, Decision and Order, the district court granted DePatco's motion and recharacterized the loan as a capital contribution, thereby moving Idaho Development's priority to last in line behind all other legitimate creditors, including ZBS, DePatco and Schiess.

ZBS subsequently filed a motion for summary judgment to establish ZBS' priority over Idaho Development's claims. Idaho Development opposed the motion, arguing that ZBS had agreed to subordinate its claim to Idaho Development after it amended its deed of trust from $1,100,000 to $850,000 and thus ZBS should not be given priority. Idaho Development also filed a Motion to Reconsider the first summary judgment which had recharacterized the advancement as a contribution to capital. ZBS, DePatco, and Schiess entered into an agreement to jointly foreclose their liens. Because Teton View failed to appear and answer with respect to the claims of ZBS and Schiess, the court entered default judgment against Teton View. Third-party defendants, Amerititle and Idaho Title & Trust, Inc., as trustees of the deeds of trust at issue in this case, stipulated to entry of judgment. The court entered judgment on May 11, 2010 establishing that ZBS' deed of trust, DePatco's deed of trust and Schiess' lien, were valid first liens on the property. It ordered judgment of foreclosure against Teton View and in favor of ZBS, DePatco and Schiess. The district court issued a Rule 54(b) certificate with its judgment, allowing that judgment to be appealed to this Court.

Idaho Development's Motion to Reconsider was denied on August 30, 2010. Idaho Development provided argument on appeal as to why the Motion to Reconsider was improperly denied. Although it did not appeal from that order, and the Notice of Appeal was filed almost three months before the Motion to Reconsider was denied, Idaho Appellate Rule 17 instructs that all interlocutory or final orders entered after the final judgment appealed from shall be deemed included on appeal. Nevertheless, given the outcome of this opinion, the Court finds it unnecessary to decide whether the Motion to Reconsider was improperly denied. Idaho Development filed its Notice of Appeal on June 3, 2010 and properly appealed from the May 11, 2010 Judgment certified by the Rule 54(b) certificate.

4

# III. ISSUES ON APPEAL

1. Whether the district court improperly granted summary judgment by recharacterizing Idaho Development's $1,100,000 advance as a capital contribution?

2. Whether the summary judgment should be affirmed on the alternative basis that equitable subordination should be applied?

3. Whether the district court improperly granted summary judgment establishing ZBS' priority over Idaho Development?

4. Whether either party is entitled to attorney's fees on appeal?

# IV. STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court applies the same standard of review used by the district court in ruling on the motion." *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 441, 235 P.3d 387, 391 (2010). A grant of summary judgment is warranted where "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). The facts must be liberally construed in favor of the non-moving party. *Renzo v. Idaho State Dep't. of Agric.*, 149 Idaho 777, 779, 241 P.3d 950, 952 (2010). "The burden of proving the absence of an issue of material fact rests at all times upon the moving party." *Blickenstaff v. Clegg*, 140 Idaho 572, 577, 97 P.3d 439, 444 (2004). "When an action will be tried before a court without a jury, the court may, in ruling on the motions for summary judgment, draw probable inferences arising from the undisputed evidentiary facts." *Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009).

# V. ANALYSIS

**A. The District Court Erred in Granting Summary Judgment to DePatco by Recharacterizing Idaho Development's Advance to Teton View as a Capital Contribution because there Was a Genuine Issue of Fact as to whether the Entire Advance Was Intended to be a Capital Contribution**

*1. This Court Has Previously Held that Debt Recharacterization of an Advance as a Loan or as Capital Contribution Depends on the Intent of the Parties*

Debt recharacterization is a tool developed by federal bankruptcy courts as an alternative to equitable subordination. Debt recharacterization "rests on the substance of the transaction giving rise to the claimant's demand" instead of the court's "assessment of the creditor's behavior," and thus most courts do not require inequitable conduct to be shown in order to apply recharacterization. *In re Official Comm. of Unsecured Creditors for Dornier Aviation, Inc.*, 453 F.3d 225, 232 (4th Cir. 2006); s*ee also In re N & D Props., Inc.*, 799 F.2d 726, 733 (11th Cir.

5

1986) (applying debt characterization if there was initial under-capitalization of the corporation or if no other disinterested lender would have extended credit); *In re SubMicron Sys. Corp.*, 432 F.3d 448, 456 n.8 (3d Cir. 2006) (identifying several similar multi-factor tests utilized by federal courts). In actuality, the label "recharacterization" is somewhat of a misnomer. The real aim of the trial court is to make "the determination whether an advance is debt or equity," which "depends on the distinction between a creditor who seeks a definite obligation that is payable in any event, and a shareholder who seeks to make an investment and to share in the profits and risks of loss in the venture;" thus the court really is engaging in a 'characterization' rather than a '*re*characterization.' *Bauer v. C.I.R.*, 748 F.2d 1365, 1367 (9th Cir. 1984); *see also In re Airadigm Commc'ns., Inc.*, 616 F.3d 642, 653 (7th Cir. 2010) ("Recharacterization is a theory, adopted by the overwhelming majority of courts to have considered the question, that bankruptcy courts may place the proper label of 'claim' (generally, debt) or 'interest' (equity) on an advance of funds, regardless of what the parties call it.").

Equitable subordination and debt recharacterization both end up reaching the same result: the insider advance is subordinated to the loans of the legitimate outside creditors. However, for the purposes of equitable subordination, the subordination itself is the remedy in equity. While for the purposes of recharacterization, subordination is merely a consequence of the loan no longer being characterized as a loan, but as a capital contribution, thereby necessarily downgrading its priority to the back of the line. As the Tenth Circuit stated:

> Recharacterization cases turn on whether a debt actually exists, not on whether the claim should be equitably subordinated. In a recharacterization analysis, if the court determines that the advance of money is equity and not debt, the claim is recharacterized and the *effect* is subordination of the claim as a proprietary interest because the corporation repays capital contributions only after satisfying all other obligations of the corporation. In an equitable subordination analysis, the court is reviewing whether a legitimate creditor engaged in inequitable conduct, in which case the *remedy* is subordination of the creditor's claim to that of another creditor *only to the extent necessary* to offset injury or damage suffered by the creditor in whose favor the equitable doctrine may be effective.

*In re Hedged-Invs. Assocs., Inc.*, 380 F.3d 1292, 1297 (10th Cir. 2004) (quoting *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 748–49 (6th Cir. 2001) (emphasis in original)); s*ee also In re Aradigm Commc'ns.*, 616 F.3d at 658 ("[W]hen a claim is equitably subordinated, a court disregards a party's formal rights; when a claim is recharacterized, a court determines what those formal rights are in the first instance."). The aim of debt recharacterization is to determine what

the transaction actually is, because "persons making capital contributions are not corporate creditors." *Tanzi v. Fiberglass Swimming Pools, Inc.*, 414 A.2d 484, 489 (R.I. 1980).

The district court in the present case utilized the simple and practical approach of the Third Circuit, which calls for "a commonsense conclusion that the party infusing funds does so as a banker (the party expects to be repaid with interest no matter the borrower's fortunes; therefore the funds are debt) or as an investor (the funds infused are repaid based on the borrower's fortunes; hence they are equity)." *In re SubMicron Sys. Corp.*, 432 F.3d 448, 456 (3d Cir. 2006). Thus, the "determinative inquiry in classifying advances as debt or equity is the intent of the parties as it existed at the time of the transactions." *Id.* at 457. "That intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances. Answers lie in facts that confer context case-by-case." *Id.* at 456.

The Court similarly characterized advancements as capital contributions rather than loans in two cases cited by the district court, *Lettunich v. Lettunich*, 141 Idaho 425, 111 P.3d 110 (2005) and *Vreeken v. Lockwood Engineering, B.V.*, 148 Idaho 89, 218 P.3d 1150 (2009). The district court stated, and the Respondents argued, that those cases did not involve "debt recharacterization" because the court in those cases determined that the assets *were* capital contributions, rather than loans that should be "recharacterized" as capital contributions. This argument misses the purpose of "debt recharacterization" which is to characterize what the substance of the advance is, based on the intent of the parties, regardless of what label the parties may have put on it. Therefore, it should be recognized that in both *Lettunich* and *Vreeken*, the Court did "recharacterize" the advances as capital contributions. In essence, this Court has already used the Third Circuit's streamlined common-sense approach in *Lettunich* and *Vreeken*. Thus, in recharacterizing debt, this Court looks to the true intent of the parties in entering the transaction.

While Idaho case law does not expressly refer to "debt recharacterization" by that same term, it seems to have used a practical approach, similar in substance to the one employed by the Third Circuit, to determine whether an advance by a shareholder was a valid loan or instead a capital contribution. *Weyerhaeuser Co. v. Clark's Material Supply Co.*, 90 Idaho 455, 461, 413 P.2d 180, 183 (1966). The court in *Weyerhaeuser* found that the facts of the case led to the conclusion that the shareholders were not creditors of the corporation so as to entitle them to

7

share in the distribution of the corporate assets. *Id.* Those facts were: (1) the shareholders were not listed on the corporate records as creditors; (2) no note was executed; (3) the proceeds of the loan were not used by the corporation for corporate purposes; and (4) at least one creditor advanced credit to the corporation on the representation that the proceeds of the shareholder loan would be available to satisfy the debt, which they were not. *Id.* Thus, the Court, in essence, used its power to place the proper label on the advance, thereby "recharacterizing" it, properly, as capital after analyzing the parties' intent.

  2. *The District Court Improperly Granted Summary Judgment because there Was Conflicting Evidence as to whether All of the $1,100,000 Advance Was Intended to be a Capital Contribution*

Since this Court has previously held that the test for recharacterization of a debt is to look at the intent of the parties, the next step is to determine whether there are any genuine issues of fact. Thus, the Court must determine whether the district court's conclusion that the advance is a capital contribution and not a loan is an issue of fact or an issue of law. The Ninth Circuit has held that the question of whether an advance to a corporation is debt or equity is "primarily directed at ascertaining the intent of the parties." *A.R. Lantz Co. v. United States*, 424 F.2d 1330, 1333 (9th Cir. 1970). Because the question of intent is one of fact, the determination as to whether to recharacterize an advance as a capital contribution or as a loan is an issue of fact. *Bauer*, 748 F.2d at 1367.

Further, this Court has previously acknowledged in prior cases that the determination that an advance is a capital contribution and not a loan is a factual one. *Vreeken*, 148 Idaho at 109–10, 218 P.3d at 1170–71 (2009); *Lettunich*, 141 Idaho at 433, 111 P.3d at 118 (2005). In *Vreeken*, the Court reviewed the district court's finding of facts following a bench trial, including the finding that certain assets were capital contributions instead of loans. *Id.* The Court found that despite some evidence that the assets may have been intended to be a loan, there was "substantial and competent evidence," supporting the conclusion that they were capital contributions, namely that they were listed as being owned by the corporation and were being used by the corporation in the normal course of business operations. *Id.* at 110, 218 P.3d at 1171. In *Lettunich*, the Court found that although there was conflicting evidence as to whether the money advanced to the partnership was intended to be a loan or a capital contribution, the district court's finding that the advance was a capital contribution was supported by substantial evidence. 141 Idaho at 433, 111 P.3d at 118. Once again, the determination as to whether the

8

advance was a loan or a capital contribution was treated as a factual finding. Thus, the Court finds that the determination made by the district court in summary judgment that Idaho Development's advance was a capital contribution and not a loan was a factual determination.

In ruling on motions for summary judgment without a jury, the court may draw probable inferences from undisputed evidentiary facts. *Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009) (citing *Banner Life Ins. Co. v. Mark Wallace Dixon Irrevocable Trust*, 147 Idaho 117, 124, 206 P.3d 481, 488 (2009)). "Drawing probable inferences under such circumstances is permissible because the court, as the trier of fact, would be responsible for resolving conflicting inferences at trial. However, if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented, then summary judgment is improper." *Id.* (citing *Boise Tower Assocs. v. Hogland*, 147 Idaho 774, 779, 215 P.3d 494, 499 (2009)). Given the standard of review on a motion for summary judgment, prior to a bench trial, the district court here improperly granted summary judgment because it made a factual finding based on conflicting evidence which was not the most probable inference from the facts before it. There are three potential inferences that could have been drawn from the evidence presented by both parties: (1) the entire $1,100,000 was intended to be a capital contribution; (2) the entire $1,100,000 was intended to be a loan; or (3) part of the $1,100,000 was intended to be a capital contribution and part of it was intended to be a loan. Only the first of these inferences would warrant the conclusion reached by the district court, characterizing the advance as a capital contribution and granting summary judgment. Unless that was the "most probable inference[] to be drawn from [the] uncontroverted evidentiary facts" presented at summary judgment, the district court erred in granting it. *Loomis v. City of Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991). In this case, the Court finds that the issues were too controverted to ascertain the intent of the parties.

The district court acknowledged that there was conflicting evidence as to whether the parties intended part or all of the contribution to be a loan or a capital contribution. The court stated "there is documentation supporting the argument that the parties intended the advance to be a loan." It further noted that the documentation referred to the advance as a loan, and called for regular payments and interest on that loan. The district court then went on to recognize that "the documentation also contains elements of an equity investment," noting that Teton View had no capital outside of Idaho Development's advance and that Idaho Development was to receive

9

one third of Teton View's profits by entering into the Joint Venture Agreement. The lower court concluded that "[t]he subjective and objective intent of the parties demonstrate that Idaho [Development] sought to be both an investor in and a creditor to Teton View." It then stated that because Idaho Development had not differentiated between what money it intended to be used as a capital investment and what money was to be treated as a loan, the entire amount was to be recharacterized as a capital investment.

DePatco presented no evidence that the entire $1,100,000 was intended to be a capital contribution, other than the fact that Teton View did not have any other initial capital contributions aside from Idaho Development's advance. It is likely, given that it had no other capital contributions, that at least a portion of that advance was intended to be used as capital. Nevertheless, the burden was on DePatco as the movant to show there was no genuine issue of material fact that the *entire* amount was intended to be a capital contribution and thus should be characterized as such. *See Foster v. Traul*, 141 Idaho 890, 893, 120 P.3d 278, 281 (2005). It is true that "the non-moving party cannot rely upon bare allegations" but instead "must establish the existence of an issue of fact with regard to the challenged elements" where "a motion for summary judgment is supported by an evidentiary showing." *Rincover v. State Dep't of Fin., Sec. Bureau*, 128 Idaho 653, 659–60, 917 P.2d 1293, 1299–300 (1996).

However, the evidence presented here by Idaho Development, including the language in the Joint Venture Agreement regarding repayment of part of the loan upon the funding of a construction loan, as well as the promissory note secured by the deed of trust providing for monthly payments of a specified amount plus interest to be completed within ninety days, provides strong evidence that at least part of the advance was intended to be a loan. The evidence presented at summary judgment also showed that Idaho Development amended its deed of trust from $1,100,000 to $850,000, rendering the remaining $250,000 unsecured. This could tend to show that the $250,000 left unsecured was intended to be a capital contribution. Similarly, Idaho Development alleges that an account was set up by Teton View in the amount of $135,000 to cover its likely business expenses. The evidence in the record shows that Teton View opened an account with Key Bank and deposited $135,000 into that account on March 10, 2008. Idaho Development was paid interest on its loan out of this account. Several other payments were made by Teton View from this account for business expenses including

engineering, irrigation application fees, excavation, surface drainage, wages, traffic control, and appraisals. This could also tend to show that $135,000 was intended to be capital.

The evidence here is similar to the type that the District of Delaware confronted in *In re SubMicron Systems, Corp.*, 291 B.R. 314 (D. Del. 2003). In that case, the court found that the advances the corporation received from an insider would not be recharacterized as equity, even though, at the time the advances were made, the corporation was already severely undercapitalized, because (1) the intent of the parties was to create debt; (2) the advances were characterized as loans on the corporate books; and (3) the advances had fixed maturity dates and rates of interest. *Id.* at 325–26. The Third Circuit affirmed the court's determination that the debt should not be recharacterized, holding that the court's factual determination was not clearly erroneous. *SubMicron Systems*, 432 F.3d at 457. Here, every document pointed to by the parties, including the Joint Venture Agreement, the promissory note, and the deed of trust, call the advance a loan, or at the least an advance that is to be repaid. The loan had a fixed monthly payment, and it had an original maturity date of ninety days (later extended another thirty days).

As in *SubMicron Systems*, this Court finds that the evidence was at least conflicting as to whether the entire advance was intended to be a capital contribution. The party seeking to recharacterize the advance carries the burden of proof as to showing how much of the advancement was intended to be a capital contribution. Therefore, the district court erred in shifting the burden of proof from the movant challenging the characterization as a loan onto the non-movant party. Idaho Development did not have the burden to prove how much of the advance was a loan and how much of it was a capital contribution. Thus, this Court holds that the district court erred in granting summary judgment by recharacterizing the entire amount as a capital contribution despite conflicting evidence.

**B.      The District Court Did Not Err In Declining to Apply Equitable Subordination**

DePatco argues that if the Court finds that summary judgment was improperly granted because the advance was not properly characterized as a capital contribution, then the Court should equitably subordinate Idaho Development's claim to DePatco's lien. Idaho Development argues that under I.A.R. 15, DePatco may not raise this argument without a cross-appeal because the district court rested its summary judgment decision on the debt recharacterization issue. The record shows that DePatco raised the equitable subordination issue before the district court. The district court declined to apply equitable subordination and instead applied debt

11

recharacterization. DePatco "is not seeking to reverse or vacate the judgment, nor is [DePatco] seeking a reversal of finding upon which the judgment is based" such that I.A.R. 15 applies to require a cross-appeal. *McKay v. Boise Project Bd. of Control*, 141 Idaho 463, 468, 111 P.3d 148, 153 (2005). Rather, DePatco is seeking to affirm the district court's decision, to subordinate Idaho Development's loan to DePatco's loan on an alternative basis, that the loan should be equitably subordinated if recharacterization was not appropriate. The Court finds that Idaho Appellate Rule 15 does not apply and DePatco was not required to file a cross-appeal on this issue.

The district court held that equitable subordination was not the law in Idaho and therefore declined to apply it. The court acknowledged that Alaska appeared to be the only state to expressly endorse the use of equitable subordination outside of the bankruptcy context, and that the vast majority of courts to consider the issue have declined to do so. Because equitable subordination is a tool developed and used almost exclusively by the bankruptcy courts, this Court declines to create new law by applying it here for the first time. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995) ("Equitable subordination is distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others.").

**C.      The Court Finds that the Advance was Improperly Recharacterized on Summary Judgment and Instructs the Court on Remand that any Portion Characterized as a Loan Has Priority over ZBS' Claim**

In its motion for summary judgment, ZBS asserted that its deed of trust was the first and paramount lien on the property. Subsequent to the motion, ZBS entered into an agreement with DePatco and Schiess, the two other lienholders on the property who had not yet settled, to jointly foreclose their liens. Idaho Development was the only party opposing this summary judgment. The district court made an oral ruling on the motion, holding that pursuant to the earlier summary judgment recharacterizing the entire loan as a capital contribution, there was no interest upon which a deed of trust could be based. Therefore, it reasoned that ZBS' interest could not have been subordinated to Idaho Development's claim because Idaho Development had no interest. As the district court recognized, whether ZBS has priority over Idaho Development's claim is dependent on how the Court resolves the first issue in this case. This Court finds that the district court improperly granted summary judgment because Idaho Development's entire advance was improperly recharacterized as a capital contribution when there were issues of fact

12

remaining regarding how much of the $1,100,000 was intended to be a capital contribution. As such, the Court must look to the priority of the loans to determine the subordination of claims.

Idaho Development recorded its deed of trust before ZBS, as evidenced by its lower instrument number. Because Idaho Development's loan was recorded first, it had the first right to be paid before ZBS. *See Blickenstaff v. Clegg*, 140 Idaho 572, 580, 97 P.3d 439, 447 (2004) ("Because M&D's deed of trust was recorded before the second U.S. Bank Lien, M&D has the right to be paid . . . before U.S. Bank receives any payment on its second loan."). The facts are conflicting on the factual issue as to what amount, if any, of Idaho Development's advance is properly characterized as a loan. Therefore, the Court finds that summary judgment was improperly entered when the court recharacterized the entire loan as a capital contribution. The Court further instructs the district court on remand that any portion of the advance that was intended to be a loan and thus is characterized as a loan, has priority over ZBS' later-recorded deed of trust. Any portion that was intended to be a capital contribution and thus is properly characterized as a capital contribution will be last in priority behind all of Teton View's legitimate outside creditors.

## D. Neither Party is Entitled to Attorney's Fees on Appeal

Idaho Development does not request attorney's fees on appeal. DePatco, Schiess and ZBS request attorney's fees on appeal under I.C. § 12-121, arguing that Idaho Development brought the appeal frivolously, unreasonably, or without foundation. ZBS alternatively requests attorney's fees on appeal under I.C. § 12-120(3), arguing that ZBS' claim is based on a promissory note secured by a deed of trust and is therefore a commercial transaction. Because this Court is vacating the district court's grant of summary judgment, neither DePatco, Schiess nor ZBS are prevailing parties on appeal. Thus, "it is not necessary to discuss whether this appeal involves a 'commercial transaction' under § 12-120(3) or whether the appeal was brought or defended unreasonably under § 12-121." *Caldwell v. Cometto*, 151 Idaho 34, 41, 253 P.3d 708, 715 (2011). No attorney's fees are awarded to the Respondents.

## VI. CONCLUSION

Because there was a genuine issue of fact as to whether the entire $1,100,000 was intended to be a capital contribution, the district court improperly granted summary judgment. Therefore, the decision of the district court granting summary judgment is vacated and the case is

13

remanded for further proceedings in accordance with this Opinion. No issue was raised in this appeal regarding the attorney's fees and costs awarded in the lower court against Teton View. Chief Justice BURDICK, Justices EISMANN and HORTON, **CONCUR.**

J. JONES, J., specially concurring.

I concur in the Court's opinion in all respects. Although not necessary to the decision of the issues presented on appeal, it is worth observing that a litigant's interests are not always best served by taking an all-or-nothing approach in the litigation. That appears to have been the situation in this case. Had Idaho Development not taken the position that the entire $1,100,000 paid to Teton View was a loan, it would likely have fared much better in district court. Based on the facts contained in the record, Idaho Development could have presented a strong case that its loan to Teton View was initially in the amount of $800,000 and that the loan was subsequently amended to $850,000. The documentation provides substantial support for this view. A loan of $850,000, which would result in an equity contribution of $250,000, would be difficult to dispute. By trying to extend its secured interest to the entire $1,100,000, Idaho Development simply overplayed its hand. By taking an all-or-nothing posture in the litigation, Idaho Development muddled its message and jeopardized what appeared to be a legitimate claim to secured priority for the $850,000 amount. If the entire $1,100,000 was a loan, that would leave the company with no equity. The district court appears to have been frustrated by this all-or-nothing position, resulting in the characterization of the entire payment as equity.

On the other hand, the respondents have not ultimately benefitted by asserting an all-or-nothing position on their own behalf. Had they recognized the implausibility of the entire payment to Teton View being characterized as an equity contribution, and offered some proof as to how the payment should be divided between the equity pot and the loan pot, they may well have fared somewhat better.

On remand, the parties will have an opportunity to dispense with their all-or-nothing positions and present a more realistic picture to the district court. They would be well advised to do so.